IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

NOV 09 2018

David J. Bradley, Clerk of Court

| | |
|---|---|
| SPEC'S FAMILY PARTNERS, LTD., § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> EXECUTIVE DIRECTOR OF THE TEXAS § <br> ALCOHOLIC BEVERAGE COMMISSION, § <br> DEXTER K. JONES, EMILY E. HELM, § <br> JUDITH L. KENNISON and MATTHEW § <br> EDWARD CHERRY, § <br> *Defendants.* § | Civil Action No. 4:18-CV-2670 |

## DEFENDANTS' MOTION TO DISMISS

Defendants Executive Director of the Texas Alcoholic Beverage Commission ("TABC"), Dexter K. Jones, Judith L. Kennison, Matthew Edward Cherry and Emily E. Helm hereby move for dismissal of Plaintiff's suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to overcome TABC's immunity to suit under Federal Rule of Civil Procedure 12(b)(1).

### I. OVERVIEW

Fundamentally, this case is an effort to recover attorney's fees spent to *successfully* defend against allegedly bad administrative lawyering. After prevailing in an administrative hearing (in which no attorney's fees were awarded), Texas' largest retail package store (Plaintiff "Spec's") seeks a federal court award of "just compensation"—including lost profits from delayed growth, "treble damages," and "attorney fees," as well as vague declaratory judgments and injunctive relief—for conduct it does not specifically allege is ongoing. Even if Spec's could establish overzealous advocacy at the administrative level, TABC retains sovereign immunity from

damages, and the individual defendants' qualified immunity defense completely bars recovery of any claimed damages as well as any declaratory relief and/or injunctions based on past conduct. Spec's' most creative effort—claims that a Texas *statute* violates federal antitrust law—is expressly prohibited by United States Supreme Court precedent. The Court should dismiss this lawsuit as a matter of law at the pleadings stage.

**A.  Factual Background**

The Texas Alcoholic Beverage Commission ("TABC") is statutorily charged, among other duties, with regulating the sale, distribution and possession of alcoholic beverages in the State of Texas. *See* TEX. ALCO. BEV. CODE § 5.31. In late 2012 or early 2013, one or more industry participants complained of misconduct by Spec's. *See* Plaintiff's First Amended Complaint ("Complaint"), filed under seal on August 27, 2018, at (Complaint ¶ 11). TABC investigated aspects of Spec's business (*id.* ¶ 12) and concluded that Spec's had violated numerous applicable Texas regulations (*id.* ¶ 15). TABC initiated a formal case at the State Office of Administrative Hearings ("SOAH") in February 2013. At that time, Spec's operated a conglomeration of 164 retail package stores in the state of Texas (*id.* ¶ 15). The initial allegation—that Spec's had an ownership interest in a wholesaler (*id.* ¶ 11)—related to Spec's as a whole, rather than any particular retail location.[1] Despite settlement discussions (*id.* ¶ 13), the administrative matter proceeded (*id.* ¶ 24).

Spec's' Complaint recounts the progress of administrative proceedings in painstaking detail (*see id.* ¶¶ 12–95). In summary, TABC formally challenged applications by Spec's for two new liquor stores (ostensibly would-be sites 165 and 166) and an application for a change of address (*id.* ¶ 16). Ultimately, the matters were combined into a consolidated SOAH proceeding

---

[1] Texas "maintain[s] and enforce[s] the three-tier system (strict separation between the manufacturing, wholesaling, and retailing levels of the industry)" through various provisions of the Texas Alcoholic Beverage Code. *See* TEX. ALCO. BEV. CODE § 6.03(i).

(*id.* ¶ 24). During the pendency of that administrative matter, TABC allegedly refused to grant renewals for existing Spec's locations (*id.* ¶ 24).

The panel of administrative law judges concluded that some, but not all, of TABC's charges could be resolved in Spec's favor as a matter of law (*e.g.*, *id.* ¶¶ 63, 80), and the remainder proceeded to hearing. After a multi-day evidentiary hearing, the panel concluded that TABC had met its burden with respect to only one of its charges against Spec's, recommending only a warning for sanction (*id.* ¶ 25). Texas law permitted TABC to challenge the panel's proposal for decision. *See* TEX. GOV'T CODE §§ 2001.141, 2001.144. TABC did not, allowing Spec's' administrative "win" to stand in its entirety.

Discontent with the favorable outcome, Spec's has filed this lawsuit in federal court to recover attorney's fees, expert witness costs, and lost profits from expanding its business, all allegedly caused by the state administrative action in which it prevailed. Spec's contends various TABC's allegations were "groundless," that the agency engaged in "prejudicial delay," and that a witness provided "false testimony" (specifically, testimony that a "Waiver Order" signed by a wholesaler constituted an admission, when a settlement agreement stated that the settlement was "not intended [as] an admission of liability." [*E.g.*, *id.* ¶¶ 35, 45].) Plaintiff claims the state administrative proceedings kept Spec's from expanding as rapidly—it opened an average of seven new retail stores per year between 2012 and 2014, three in 2015, and only one new store per year during 2016 and 2017 (*id.* ¶ 81)—and seeks the profits theoretically "lost" because Plaintiff's expansion was slowed.

Assuming *arguendo* that all Spec's fees were entirely necessary and that the company's claims of administrative persecution are all true, TABC Defendants are immune from federal suit based on qualified immunity and sovereign immunity.

## B. Spec's' Claims

Spec's' Complaint distills into three causes of action: malicious prosecution (Complaint at pp. 35-38), denial of due process (*id.* at pp. 30-33), and a federal declaratory judgment that TABC's proposed interpretation of the statute was unconstitutional (*id.* at p. 33). Each of these claims is prohibited against the administrative entity and individuals in their official capacity, as the claims seek damages and retrospective relief. With respect to the individual TABC defendants, the claims are foreclosed by qualified immunity. Attempting to add forward-looking, *prospective* relief, Spec's includes an anti-trust claim, contending that a Texas statute violates the Sherman Act (*id.* at pp. 38-40); as discussed below, the United States Supreme Court has explicitly ruled that state sovereignty forecloses this claim. In its forward-looking requests for declaratory judgment(s) and/or injunctive relief, Spec's asks this Court to opine about the proper interpretation of a state statute (*id.* at pp. 33-35, 40) that is not alleged to be the subject of any active dispute—effectively, to render an improper advisory opinion about the meaning and construction of *state* law. Spec's' creative pleading fails to establish any viable federal claim as a matter of law, and the Court should dismiss the case in its entirety.

## II. LEGAL STANDARD

Defendants bring this motion under Federal Rules of Civil Procedure 12(b)(1), for lack of jurisdiction, and 12(b)(6), for failure to state a claim. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[A] court finding that a party is entitled to sovereign immunity must dismiss the action for lack

of subject-matter jurisdiction." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009).

Federal Rule of Civil Procedure 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 336 (1989) (citations omitted). "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Id.* at 326–27. Rule 12(b)(6) also allows a court to dismiss all or part of a complaint "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 555. Qualified immunity is an affirmative defense that is appropriately brought through a Rule 12(b)(6) motion. *See Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016).

### III. ARGUMENT

**A. Sovereign immunity and the Eleventh Amendment prohibit Spec's' suit**

Spec's' Complaint seeks attorney's fees and special damages incurred due to allegedly-improper actions by TABC's attorneys and/or investigators. Assuming (without admitting) that Spec's' contentions have merit, the Eleventh Amendment renders them impotent in federal court. Absent a waiver of immunity, the Eleventh Amendment bars suits against states in federal court, regardless of the nature of the remedy sought. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). Additionally, the Eleventh Amendment forecloses the monetary damages Spec's seeks. *E.g., Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("[T]his

Court has consistently held that an unconsenting State is immune from suits brought in federal courts . . . .") (internal citations omitted)).

Naming individual officials does not circumvent the State's absolute immunity. *Edelman*, 415 U.S. at 663 ("It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment.") (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), for the proposition that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity *even though individual officials are nominal defendants*." (emphasis added)). The Eleventh Amendment's prohibition extends to state officials acting in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Where, as here, a plaintiff sues individuals in their official capacity, those individuals have sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159 (1985).

There is a narrow exception to public officials' Eleventh Amendment immunity under *Ex parte Young*, but it does not apply here. 209 U.S. 123 (1908). *Ex parte Young* is a fiction that views an official capacity suit not to be a suit against the state where the official threatens a prospective violation of *federal* law. *See, e.g., Pennhurst*, 465 U.S. at 89 (plaintiff cannot use *Ex parte Young* exception to force state officials to follow state law). *Ex parte Young* requires that a plaintiff's suit articulate an *ongoing* violation of *federal* law and that the complaint seek relief properly characterized as *prospective*. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

**B.  The Eleventh Amendment forecloses the relief sought by Spec's—despite naming individual defendants or characterizing the relief as "injunctive."**

Spec's' lawsuit cannot result in an award of damages or attorney's fees incurred in the past. Nor can Spec's circumvent Eleventh Amendment immunity from suit by recasting its complaints

about the administrative hearing as a request for declaratory or injunctive relief relating to past conduct. *See, e.g., Verizon*, 535 U.S. at 645; *Edelman*, 415 U.S. at 656, 671–72 (though the complaint described relief as "declaratory and injunctive," the Supreme Court held the Eleventh Amendment barred it). Even if TABC or its officials misconstrued Texas liquor laws (which, of course, they do not concede), no violation of federal law occurred, and TABC and its officials retain Eleventh Amendment immunity from suit. However, Spec's' official capacity claims against TABC officials are also barred because—regardless of whether a violation of federal law occurred—any violation ceased to be "ongoing" when TABC accepted the outcome of the SOAH hearing.

Plaintiff's claims are thus foreclosed by the Eleventh Amendment, with no applicable exception. First, *Ex parte Young* does not permit a plaintiff to seek a federal court's construction of *state* law, even one that is prospective in nature. (Here, Spec's asks for a *federal court* to render a declaratory judgment construing various provisions of the Texas Alcoholic Beverage Code.) Second, Spec's requests for "declaratory and injunctive" relief about *past* conduct are prohibited, even if a federal law is implicated. The Supreme Court has repeatedly instructed that the Eleventh Amendment bars a retrospective declaration of a violation of federal law where, as here, there is "no claimed continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 73 (1985); *see also Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) (holding that Eleventh Amendment precludes an award of injunctive or declaratory relief that is not prospective in effect); *Verizon*, 535 U.S. at 645.

The same is true as to Spec's' *ultra vires* allegations. Unless Spec's has specific factual allegations that some TABC officials are actively engaged in some violation of federal law, on a prospective basis, claims that the TABC officials previously acted outside their authority are

foreclosed by the Eleventh Amendment. A review of Spec's' Complaint reveals no specific factual allegations of any ongoing conduct by TABC officials that even allegedly constitutes a continuing violation of federal law—instead, Spec's seeks declaratory/injunctive relief related to *past* conduct with general prohibitions against the same in the future. Without specific, factual allegations of ongoing federally-proscribed conduct—allegations that would lack plausibility even if Spec's had asserted them—the Eleventh Amendment requires dismissal of Plaintiff's "official capacity" claims.[2]

Pursuant to the explicit requirements of the Eleventh Amendment, as repeatedly explained by the Supreme Court, the Court should dismiss Plaintiff's official capacity claims against all defendants, as well as all claims for declaratory judgment or injunctive relief regarding alleged *past* conduct by the Texas Alcoholic Beverage Commission or its officials.

**C.     Defendants are entitled to absolute immunity.**

Spec's claims Defendants pursued "groundless allegations" against Spec's, without sufficient evidence, and knowingly elicited false testimony from a witness (*e.g.*, Complaint at p. 30 [groundless allegations], p. 14 [allegations of knowingly eliciting false testimony].) Spec's also complains that Investigator Jones provided inaccurate testimony (*id.* ¶¶ 52-54).

Helm, Kennison, and Cherry were effectively prosecutors for TABC, pursuing regulatory action against Spec's (*e.g.*, *id.* ¶¶ 6-8). Accordingly, they are entitled to absolute immunity. Prosecutors are absolutely immune from suit under Section 1983 for acts taken while initiating or

---

[2] Ripeness also compels dismissal of Spec's' generic requests for declaratory/injunctive relief regarding TABC's abstract administrative actions in the future. As the Supreme Court has explained:

> Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S.803, 807–08 (2003) (citation omitted).

prosecuting cases on behalf of the government. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). The policy considerations for prosecutorial immunity apply with equal force to regulator attorneys like Helm, Kennison, and Cherry:

> The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby.

*Id.* at 423-24 (citations omitted). Prosecutors and testifying witnesses are entitled to absolute immunity for their actions and testimony at trial, even where malice is alleged. *E.g., Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–70 (1993), for "the well-established rule that prosecutors and witnesses . . . have absolute immunity for their testimony at trial.").

It is unclear, at best, that an administrative proceeding could serve as the predicate for a malicious prosecution claim. Spec's cites *Johnson v. State Bd. of Morticians* for the proposition, but the court actually opined that *if such an action existed*, quasi-judicial immunity (such as prosecutorial immunity) would apply to the government participants: "We find no Texas authority ruling on the civil liability, for their official acts, of inspectors and investigators of administrative bodies . . . charged with assisting in the enforcement of the laws which they administer." 288 S.W.2d 214, 216 (Tex. Civ. App.—Galveston 1956, no writ). Instead, the court expressed "considerable doubt in our minds whether . . . an action for malicious prosecution would be maintainable against [the Board members, field representatives, agents, and employees of the Board] since each and all appear to have acted in quasijudicial capacities" and would thus be "insulated against liability for malicious prosecution." *Id.; see also Lechin v. United Airlines, Inc.*,

2017 WL 3432729, at *3 (S.D. Tex. Aug. 9, 2017) (under Texas law, malicious prosecution claim requires plaintiff to establish, among other things, "the commencement of a *criminal* prosecution against the plaintiff" (emphasis added)).

This Court, like the Texas state court, should hold that Defendants are insulated from potential liability for their official acts to enforce the laws that TABC administers.

### D. Qualified immunity shields the individually named defendants from liability.

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). After a government official asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to show that the defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir. 1987). Whether a defendant is entitled to qualified immunity is a purely legal question, and plaintiffs have the burden of proof. *Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010).

A public official is entitled to qualified immunity unless a plaintiff demonstrates (1) a violation of a constitutional right, and (2) that the right at issue was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2099, 2093 (2012) (internal citations omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.*

Thus, to surmount the assertion of qualified immunity, Spec's must plead sufficient specific facts to show that (1) the Individual Defendants violated a constitutional right of Spec's,

and (2) in light of the facts and law available to them, every reasonable official would have known they were violating that right. *Reichle*, 132 S. Ct. at 2093; *Aschcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). Spec's' Complaint against the Individual Defendants satisfies neither requirement.

As discussed below, Spec's' claim that it was subjected to "groundless" administrative challenges fails to implicate a constitutional right. And, to the extent such a deprivation existed, there is no "clearly established law" that the allegations pursued, or the method in which they were presented, violated any such right. The Administrative Law Judges declined to dismiss at least some of the claims against Spec's, ruling for Spec's on the others because TABC "had not met its burden of proof." The fact that the ruling(s) hinged at least in part on the evidence presented demonstrates that there was no relevant "clearly established law" (Complaint ¶ 25).

Spec's does not allege any cognizable constitutional claim, much less clearly established law, that could support liability. "Malicious prosecution" is not a freestanding violation of the U.S. Constitution. *See Castellano*, 352 F.3d at 946; *Gonzalez v. City of Corpus Christi Tex.*, 2011 WL 147741, at *3 (S.D. Tex. Jan. 18, 2011) ("In *Castellano*, the Fifth Circuit held that the initiation of criminal proceedings without probable cause does not automatically give rise to a § 1983 claim. . . . Rather, a plaintiff must show that officials violated specific constitutional rights in connection with a 'malicious prosecution' in order to trigger the remedies of § 1983."). Malicious prosecution cannot support a Section 1983 claim; instead, the claim must be explicitly tied to a constitutional deprivation. *Castellano*, 352 F.3d at 953-54 ("[T]he assertion of malicious prosecution states no constitutional claim . . . claims [that] may be made under 42 U.S.C. § 1983 . . . are not claims for malicious prosecution, and labeling them as such only invites prosecution.") There is no jurisdiction for Spec's to sue for malicious prosecution in federal court, even if TABC's charges

against Spec's were "specious," as alleged. (To be clear, that is assumed for purposes of this motion but not admitted: even Spec's' Complaint reveals a panel of administrative law judges determined TABC's charges required an evidentiary hearing; further, the panel concluded that TABC had failed to meet its burden of proof, rather than that the charges were unwarranted [Complaint ¶ 25].) *Castellano*'s logic also requires that Spec's tie its generic claim of a "due process" violation to some specific alleged constitutional violation.

In *Castellano*, a police officer altered tape recordings admitted to evidence and gave perjured testimony in a criminal trial, resulting in plaintiff's conviction and jail time. 352 F.3d at 943. The Fifth Circuit overturned a civil verdict against the officer, establishing that malicious prosecution cannot underpin a § 1983 claim. *Id.* at 960–61 ("Our insistence that the anchor of constitutional claims be visible is demanded by our limited jurisdiction."). Even under those egregious circumstances—with a clear denial of due process—the Fifth Circuit noted that a suit might not be viable, noting "the well-established rule that prosecutors and witnesses . . . have absolute immunity for their testimony at trial." *Id.* at 959.

TABC lawyers elicited testimony that wholesaler United Wine "admitted" certain allegations, relying on a "Waiver Order" between TABC and United Wine (Complaint ¶¶ 44, 45), when a "Settlement Agreement" between those parties expressly disclaimed any such admission (*Id.*). Plaintiff's Complaint—and the SOAH findings cited—reveal that this error, even if intentional, was cured through cross-examination. (*Id.* ¶ 45). Where the Plaintiff had the benefit of cross-examination, an opportunity to be heard, and ultimately prevailed, there is no constitutional deprivation that can support a Section 1983 claim against the Individual Defendants.

Spec's makes passing references to the Fourth, Fifth, and Fourteenth Amendments, but it fails to articulate any plausible factual basis for a claim. The Fourth Amendment, addressing

unreasonable search and seizure, does not apply. The Fifth Amendment requires just compensation for property taken by the government, but Spec's does not allege that any property (real or personal) was actually taken. The due process guarantees of the Fourteenth Amendment were satisfied in this case, as Spec's ultimately prevailed in the administrative hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985) (essential principle of due process is notice and opportunity for hearing appropriate to the case prior to deprivation of life, liberty, or property).

Spec's does not identify any vested property right or liberty interest of which it was deprived. *Id.* at 538 (federal constitutional claim depends on liberty interest or property right, created by state law). After administrative hearing, Spec's was left with only a warning. (Complaint at ¶ 37). Spec's "damages" as a result of the alleged "abusive regulatory overreach" amount to (1) attorney's fees incurred to defend against administrative charges and (2) an alleged temporary slow-down of its expansion. Neither constitutes a cognizable vested property right. *See Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015) (holding "a constitutionally protected right must be a vested right, which is something more than a mere expectancy based upon an anticipated continuance of an existing law.") (internal citation and quotation marks omitted); *see also* TEX. ALCO. BEV. CODE § 11.03 ("A permit issued under this code is a purely personal privilege and is subject to revocation as provided in this code. It is not property . . . .").

TABC did not deprive Spec's of any constitutional right. Where an industry complaint and administrative investigation suggest serious misconduct by a business entity, it is not a constitutional violation to pursue administrative action authorized by state law or to decline to grant administrative approvals to that entity. But even if Spec's could articulate some constitutional violation, the individual defendants retain qualified immunity: pursuing

administrative action and zealously representing an agency in a highly-regulated industry do not violate "clearly established law," regardless of the administrative hearing's outcome.

The same is true for any allegation that Defendants failed to adequately prepare a witness, required Spec's administrative counsel to clarify the factual record through cross-examination, or even intentionally solicited one-sided testimony. Even assuming these allegations are true, none of the alleged conduct amounts to a constitutional violation for which Spec's may seek relief under Section 1983. Nor did any of Defendants' alleged conduct violate clearly established law permitting individual liability. Accordingly, Spec's' putative Section 1983 claims are not viable and should be dismissed.

i. **Rule 7(a) Reply**

Alternatively, it is proper for this Court to consider at the motion to dismiss stage whether this suit must be dismissed if, pursuant to the *Schultea* procedure, Individual Defendants invoke Federal Rule of Civil Procedure 7(a). Rule 7(a) requires Spec's to file a reply that pleads specific facts to specifically engage the qualified immunity defense. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (noting that if "a public official pleads the affirmative defense of qualified immunity . . . the district court may . . . require the plaintiff to reply to that defense in detail . . . [T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations."). In the event that the Court does not dismiss the claims against Defendants named in their individual capacity on the basis of qualified immunity, the Defendants invoke Rule 7(a) and request that the Court order Spec's to file a Rule 7(a) reply to fairly engage the defenses articulated in this brief.[3] *See id.* at 1434 ("[v]indicating the [qualified] immunity doctrine will ordinarily

---

[3] The Rule 7(a) reply procedure and the subsequent decision by this Court on the motion to dismiss should precede any discovery in this case. *See Schultea*, 47 F.3d at 1434 (court "need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of the defendant's conduct at the time of the alleged acts").

require [a Rule 7(a)] reply, and a district court's discretion not to [require such a reply] is narrow indeed when greater detail might assist.").

Section 1983 provides a cause of action for the deprivation of a federally-protected right. Spec's points generally to certain provisions of the United States Constitution, though the underlying action involved the Texas Alcoholic Beverage Code. As discussed, TABC officials are immune from liability under the Eleventh Amendment, and have absolute and/or qualified immunity in their personal capacity. But Spec's' claims are not viable, regardless. Spec's asserts the Court has jurisdiction under Section 1983 for claims of "malicious prosecution" and "denial of due process," pointing generally to the testimony regarding United. Neither claim is pleaded sufficiently to articulate a viable Section 1983 claim, and the facts recounted reveal no such claim could be viable.

E.      **Spec's' anti-trust claims are specious**

Spec's asks the Court for "a declaratory judgment that Texas Alcoholic Beverage Code § 102.07(a)(7) . . . either violates or is a *per se* violation of the Sherman Anti-Trust Act . . . ." (Complaint at ¶ 2). Supreme Court precedent prohibits any such declaration:

> State legislation and "decision[s] of a state supreme court, acting legislatively rather than judicially" [are an exercise of the State's sovereign power] and "*ipso facto* are exempt from the operation of antitrust laws" because they are an undoubted exercise of sovereign authority.

*N.C. State Bd. of Dental Exam'rs v. F.T.C.*, 135 S.Ct. 1101, 1110 (2015) (citing *Hoover v. Ronwin*, 466 U.S. 558, 568 (1984)).

A federal court might apply anti-trust law where a state delegates control over a market to a non-sovereign actor, but federalism requires immunity for state agencies such as TABC that are "more than a mere façade of state involvement." *Id.* at 1110-11. Spec's offers no factual allegation suggesting TABC is a non-sovereign actor, divorced from "political accountability for

anticompetitive conduct they permit and control." *Id.* Instead, Spec's affirmatively recognizes that TABC is part of the State. *See* Complaint at ¶ 109 ("Defendants are members of the executive branch of state government . . . ."); *see also* TEX. ALCO. BEV. CODE § 5.01(a) ("The Texas Alcoholic Beverage Commission is an agency of the state."). Accordingly, federalism—and controlling Supreme Court precedent—requires dismissal of Spec's' anti-trust claims.

## IV. CONCLUSION AND PRAYER

Spec's struggles to convert its dissatisfaction with a concluded state administrative action into a federal lawsuit. For its claims for retrospective relief and damages, this Court lacks jurisdiction pursuant to the Eleventh Amendment. For the balance, Spec's cannot plausibly allege facts converting its administrative win into a federal claim for attorney's fees and purported lost profits. Spec's' constitutional claims, even if they were viable, lack legal precedent, much less clearly established law. Its anti-trust claim is invalid as a matter of decided Supreme Court precedent. Spec's' lawsuit does not assert any viable federal claim from which Defendants are not wholly immune, and Defendants respectfully request that this Court dismiss this case in its entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Acting Chief - General Litigation Division

/s/ Carl.
H. CARL MYERS
Texas Bar No. 24046502
Southern District No. 852368
Attorney-in-Charge
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Southern District No. 2513900
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
carl.myers@oag.texas.gov
michael.abrams@oag.texas.gov

***COUNSEL FOR DEFENDANTS
EXECUTIVE DIRECTOR OF THE
TEXAS ALCOHOLIC BEVERAGE
COMMISSION, DEXTER K. JONES,
JUDITH L. KENNISON AND
MATTHEW EDWARD CHERRY***

/s/ Adam N. Bitter
ADAM N. BITTER
Assistant Attorney General
Texas Bar No. 24085070
Southern District No. 2167538
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4055 | FAX: (512) 320-0667
adam.bitter@oag.texas.gov

***COUNSEL FOR DEFENDANT
EMILY E. HELM***

## CERTIFICATE OF SERVICE

      I hereby certify that on November 8, 2018 a true and correct copy of the foregoing document was served via electronic mail and certified mail, return receipt requested, to Plaintiff's counsel of record.

Albert T. Van Huff
MONSHAUGEN & VAN HUFF
1225 North Loop West, Suite 640
Houston, Texas 77008
al@vanhuff.com
Certified Mail, Article No. 7016 0910 0000 9121 9198

*Counsel for Plaintiff*

 

/s/ Carl.
H. CARL MYERS
Assistant Attorney General